POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| JOHN C. MILLER, JR, SBN 143323<br>MILLER LAW, INC.<br>1745 Creekside Drive<br><br>Folsom, CA 95630<br>  TELEPHONE NO.: 916-351-1200   FAX NO. *(Optional):*  916-351-1244<br>E-MAIL ADDRESS *(Optional):*<br>  ATTORNEY FOR *(Name):*  PLAINTIFFS | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** SAN DIEGO
  STREET ADDRESS: 325 S. Melrose Drive
  MAILING ADDRESS:
  CITY AND ZIP CODE: Vista, CA  92083-6698
  BRANCH NAME: North County

PLAINTIFF/PETITIONER: TIMOTHY WAGGONER, et al.

DEFENDANT/RESPONDENT: LINCOLN BP MANAGEMENT, INC., et al.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>37-2010-00061980-CU- |
|---|---|

TO *(insert name of party being served):* **UNITED STATES OF AMERICA**

---

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

---

Date of mailing: January 27, 2011

JOHN C. MILLER, JR.                              ▶
_____                    _____
(TYPE OR PRINT NAME)                             (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of *(to be completed by sender before mailing):*
  1. [ x ]  A copy of the summons and of the complaint.
  2. [ x ]  Other: *(specify):*  ADR Packet (Notice of Assignment) and Statement of Damages

*(To be completed by recipient):*
Date this form is signed:

                                                 ▶
_____                    _____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,    (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ON WHOSE BEHALF THIS FORM IS SIGNED)             ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
POS-015 [Rev. January 1, 2005]

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL**

Legal
Solutions
Plus

Code of Civil Procedure,
§§ 415.30, 417.10

**CIV-050**

**- DO NOT FILE WITH THE COURT -**
**- UNLESS YOU ARE APPLYING FOR A DEFAULT JUDGMENT UNDER CODE OF CIVIL PROCEDURE § 585 -**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name and Address):* | TELEPHONE NO.: 916-351-1200 | FOR COURT USE ONLY |
|---|---|---|
| JOHN C. MILLER, JR, SBN 143323<br>MILLER LAW, INC.<br>P. O. Box 700<br><br>Folsom, CA  95763-0700 | | |

ATTORNEY FOR *(name):* PLAINTIFFS

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF  SAN DIEGO**
STREET ADDRESS:  220 West Broadway
MAILING ADDRESS:
CITY AND ZIP CODE:  San Diego, CA 92101
BRANCH NAME:

PLAINTIFF:  TIMOTHY WAGGONER, TIMIYA WAGGONER, et al
DEFENDANT:  LINCOLN BP MANAGEMENT, INC., et al.

| STATEMENT OF DAMAGES<br>(Personal Injury or Wrongful Death) | CASE NUMBER:<br>37-2010-00061980-CU-B |
|---|---|

To *(name of one defendant only):*   TIMOTHY WAGGONER
Plaintiff *(name of one plaintiff only):*   UNITED STATES OF AMERICA
seeks damages in the above-entitled action, as follows:

AMOUNT

**1. General damages**

| | | | |
|---|---|---|---|
| a. | [x] | Pain, suffering, and inconvenience . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ 2,500,000.00 |
| b. | [x] | Emotional distress . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ 250,000.00 |
| c. | [ ] | Loss of consortium . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ 0.00 |
| d. | [ ] | Loss of society and companionship *(wrongful death actions only)* . . . . . . . . . . . . . . . . . . | $ 0.00 |
| e. | [ ] | Other *(specify)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ 0.00 |
| f. | [ ] | Other *(specify)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ 0.00 |
| g. | [ ] | Continued on Attachment 1.g. | |

**2. Special damages**

| | | | |
|---|---|---|---|
| a. | [x] | Medical expenses *(to date)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ 900,000.00 |
| b. | [x] | Future medical expenses *(present value)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ 900,000.00 |
| c. | [x] | Loss of earnings *(to date)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ 500,000.00 |
| d. | [x] | Loss of future earning capacity *(present value)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ 2,500,000.00 |
| e. | [ ] | Property damage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ 0.00 |
| f. | [ ] | Funeral expenses *(wrongful death actions only)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ 0.00 |
| g. | [ ] | Future contributions *(present value) (wrongful death actions only)* . . . . . . . . . . . . . . . . . | $ 0.00 |
| h. | [ ] | Value of personal service, advice, or training *(wrongful death actions only)* . . . . . . . . . . | $ 0.00 |
| i. | [ ] | Other *(specify)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ 0.00 |
| j. | [x] | Other *(specify)* Loss of potential benefits to Plaintiff and family . . . . . . . . . . . . . . . . . . . | $ 1,500,000.00 |
| k. | [ ] | Continued on Attachment 2.k. | |

**3.** [x] **Punitive damages:** Plaintiff reserves the right to seek punitive damages in the amount of *(specify)*. $ 1,000,000.00
when pursuing a judgment in the suit filed against you.

Date: December 27, 2010

JOHN C. MILLER, JR, SBN 143323
_____
(TYPE OR PRINT NAME)                                      ► _____
                                                              (SIGNATURE OF PLAINTIFF OR ATTORNEY FOR PLAINTIFF)

*(Proof of service on reverse)*                                                        Page 1 of 2

**STATEMENT OF DAMAGES**
(Personal Injury or Wrongful Death)
Code of Civil Procedure, §§ 425.11, 425.115

Legal
Solutions
Plus

CIV-050

**- DO NOT FILE WITH THE COURT -**
**- UNLESS YOU ARE APPLYING FOR A DEFAULT JUDGMENT UNDER CODE OF CIVIL PROCEDURE § 585 -**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name and Address)*: | TELEPHONE NO.:<br>916-351-1200 | FOR COURT USE ONLY |
|---|---|---|
| JOHN C. MILLER, JR, SBN 143323<br>MILLER LAW, INC.<br>P. O. Box 700<br><br>Folsom, CA  95763-0700 | | |

ATTORNEY FOR *(name)*:  PLAINTIFFS

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** SAN DIEGO
STREET ADDRESS:  220 West Broadway
MAILING ADDRESS:
CITY AND ZIP CODE:  San Diego, CA 92101
BRANCH NAME:

PLAINTIFF:  TIMOTHY WAGGONER, TIMIYA WAGGONER, et al
DEFENDANT:  LINCOLN BP MANAGEMENT, INC., et al.

**STATEMENT OF DAMAGES**
(Personal Injury or Wrongful Death)

CASE NUMBER:
37-2010-00061980-CU-B

To *(name of one defendant only)*:  TIMIYA WAGGONER, a Minor, by and through her Guardian ad Litem, Brittany Waggoner
Plaintiff *(name of one plaintiff only)*:  UNITED STATES OF AMERICA
seeks damages in the above-entitled action, as follows:

AMOUNT

1. **General damages**
   a. [x] Pain, suffering, and inconvenience . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 2,500,000.00
   b. [x] Emotional distress . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 250,000.00
   c. [ ] Loss of consortium . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 0.00
   d. [ ] Loss of society and companionship *(wrongful death actions only)* . . . . . . . . . . . . . . . . . . . $ 0.00
   e. [ ] Other *(specify)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 0.00
   f. [ ] Other *(specify)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 0.00
   g. [ ] Continued on Attachment 1.g.

2. **Special damages**
   a. [x] Medical expenses *(to date)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 900,000.00
   b. [x] Future medical expenses *(present value)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 900,000.00
   c. [x] Loss of earnings *(to date)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 500,000.00
   d. [x] Loss of future earning capacity *(present value)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 2,500,000.00
   e. [ ] Property damage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 0.00
   f. [ ] Funeral expenses *(wrongful death actions only)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 0.00
   g. [ ] Future contributions *(present value)* *(wrongful death actions only)* . . . . . . . . . . . . . . . . $ 0.00
   h. [ ] Value of personal service, advice, or training *(wrongful death actions only)* . . . . . . . . . . . . $ 0.00
   i. [ ] Other *(specify)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 0.00
   j. [x] Other *(specify)* Loss of potential benefits to Plaintiff and family . . . . . . . . . . . . . . . . . . $ 1,500,000.00
   k. [ ] Continued on Attachment 2.k.

3. [x] **Punitive damages:** Plaintiff reserves the right to seek punitive damages in the amount of *(specify)* . . $ 1,000,000.00
   when pursuing a judgment in the suit filed against you.

Date: December 27, 2010

JOHN C. MILLER, JR, SBN 143323
_____
(TYPE OR PRINT NAME)

▶

_____
(SIGNATURE OF PLAINTIFF OR ATTORNEY FOR PLAINTIFF)

(Proof of service on reverse)

Page 1 of 2

**STATEMENT OF DAMAGES**
(Personal Injury or Wrongful Death)

Code of Civil Procedure, §§ 425.11, 425.115

Legal
Solutions
® Plus

# SUMMONS
## (CITACION JUDICIAL)

SUM-100

**NOTICE TO DEFENDANT:** LINCOLN BP MANAGEMENT, INC.; CAMP
*(AVISO AL DEMANDADO):* PENDLETON & QUANTICO HOUSING;
LLC; LPC PENDLETON QUANTICO PM, INC.; LINCOLN
MILITARY PROPERTY MANAGEMENT, INC; LINCOLN PROPERTY
COMPANY; TEXAS LINCOLN PROPERTY; UNITED STATES OF
AMERICA; UNITED STATES DEPARTMENT OF DEFENSE; UNITED
STATES DEPARTMENT OF THE NAVY and DOES 1 through 500,
inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:** TIMOTHY WAGGONER,
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):* TIMIYA WAGGONER, a
Minor, by and through her Guardian ad Litem, BRITTANY
WAGGONER



FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

F I L E D
Clerk of the Superior Court
JAN 1 4 2010
BY: C. TERRIQUEZ

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* | CASE NUMBER: *(Número del Caso):* |
|---|---|
| SAN DIEGO SUPERIOR COURT<br>325 S. Melrose Drive<br>Vista, CA  92083-6698 | 37-2010-61980-CU-BC-NC |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
JOHN C. MILLER, JR, SBN 143323          916-351-1200     916-351-1244
MILLER LAW, INC.
P. O. Box 700
Folsom, CA  95763-0700

| DATE:<br>*(Fecha)* JAN 1 4 2011 | Clerk, by<br>*(Secretario)* C. Terriquez | , Deputy<br>*(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

FROM Advanced Attorney Services                    (THU)NOV 18 2010 10:48/ST. 10:45/No. 9300918877 P  7

FILED
SUPERIOR COURT / DIVISION
NOV 17 PM 2: 57
(7)
CLERK-SUPERIOR COURT
SAN DIEGO COUNTY, CA

FILE STAMP
CANCELLED
NOV 17 PM 2:57
CLERK-SUPERIOR COURT
SAN DIEGO COUNTY, CA

1  JOHN C. MILLER, JR., #143323
   MILLER LAW, INC.
2  A Professional Law Corporation
   MAILING ADDRESS:
3  Post Office Box 700
   Folsom, California 95763-0700
4  Phone: (916) 351-1200
   Fax: (916) 351-1244
5
6  Attorneys for Plaintiff TIMOTHY WAGGONER
7
8              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
9                 IN AND FOR THE COUNTY OF SAN DIEGO

                                                                    VIA FAX

10  TIMOTHY   WAGGONER,  TIMIYA)        CASE NO.  37-2010-00061980-CU-BC-NC
    WAGGONER, a Minor, by and through her)
11  Guardian  ad  Litem,  BRITTANY)      COMPLAINT FOR DAMAGES
    WAGGONER,                          )
12                                      )
            Plaintiffs,                 )        General Negligence
13                                      )   2.   Breach of Contract
    v.                                  )   3.   Breach of the Implied Warranty of
14                                      )        Habitability
    LINCOLN BP MANAGEMENT, INC.; CAMP)           a.    Common Law
15  PENDLETON & QUANTICO HOUSING;)             b.    Statutory
    LLC; LPC PENDLETON QUANTICO PM,)        4.   Nuisance
16  INC.; LINCOLN MILITARY PROPERTY)
    MANAGEMENT, INC;    LINCOLN)
17  PROPERTY COMPANY; TEXAS LINCOLN)
    PROPERTY;  UNITED   STATES   OF)
18  AMERICA;    UNITED    STATES)
    DEPARTMENT  OF  DEFENSE;  UNITED)
19  STATES DEPARTMENT OF THE NAVY and)
    DOES 1 through 500, inclusive,       )
20                                      )
            Defendants.                  )
21  _____)

22         COME NOW Plaintiff TIMOTHY WAGGONER, TIMIYA WAGGONER, a Minor, by and

23  through her Guardian ad Litem, BRITTANY WAGGONER ("PLAINTIFFS"), who allege as follows:

24                                      I.

25                                 PARTIES

26         1.     PLAINTIFFS are, and at all times mentioned herein were residents of the County of

27  San Diego, State of California.  The property (hereinafter referred to as the "Subject Property")  is

28  more particularly described as a rental home located at 118 Martin Street, Unit 118, Oceanside,

MILLER LAW, INC.
Post Office Box 700
Folsom, California 95763-0700
(916) 351-1200

1   Califiornia.

2        2.      PLAINTIFFS are informed and believe, and thereon allege, that Defendants LINCOLN

3   BP MANAGEMENT, INC.; CAMP PENDLETON & QUANTICO HOUSING; LLC; LPC

4   PENDLETON QUANTICO PM, INC.; LINCOLN MILITARY PROPERTY MANAGEMENT, INC;

5   LINCOLN PROPERTY COMPANY; TEXAS LINCOLN PROPERTY; UNITED STATE OF

6   AMERICA; UNITED STATE DEPARTMENT OF DEFENSE; UNITED STATES DEPARTMENT

7   OF THE NAVY and DOES 1 through 10 are owners or former owners of the Subject Property. The

8   above-referenced defendants are collectively referred to herein as the "OWNER DEFENDANTS."

9   PLAINTIFFS are informed and believe, and thereon allege, that these OWNER DEFENDANTS

10   owned, possessed, managed, operated, leased, rented, maintained, repaired, controlled, and/or

11   supervised the Subject Property at all times relevant herein.

12        3.      PLAINTIFFS are informed and believe, and thereon allege, that Defendants Defendants

13   LINCOLN BP MANAGEMENT, INC.; CAMP PENDLETON & QUANTICO HOUSING; LLC; LPC

14   PENDLETON QUANTICO PM, INC.; LINCOLN MILITARY PROPERTY MANAGEMENT, INC;

15   LINCOLN PROPERTY COMPANY; TEXAS LINCOLN PROPERTY; UNITED STATE OF

16   AMERICA; UNITED STATE DEPARTMENT OF DEFENSE; UNITED STATES DEPARTMENT

17   OF THE NAVY and DOES 1 through 500 ; and DOES 11 through 20 are or were managers of the

18   Subject Property. These defendants are collectively known as the "MANAGER DEFENDANTS."

19   PLAINTIFFS are informed and believe, and thereon allege, that these MANAGER DEFENDANTS

20   managed, operated, leased, rented, maintained, repaired, controlled, and/or supervised the Subject

21   Property at all times relevant herein.

22        4.      PLAINTIFFS are informed and believe, and thereon allege, that DOES 21 through 30

23   are additional employees and/or agents of OWNER DEFENDANTS and/or MANAGER

24   DEFENDANTS.

25        5.      PLAINTIFFS are informed and believe, and thereon allege, that Defendants DOES 31

26   through 40 are business entities and/or individuals qualified to and doing business in the State of

27   California, County of Sacramento. PLAINTIFFS are informed and believe, and thereon allege, that

28   these Defendants inspected, maintained, repaired, controlled, and/or supervised the Subject Property

MILLER LAW, INC.
Post Office Box 700
Folsom, California 95763-0700
(916) 351-1200

1   including without limitation performing inspections, drywall removal, windows, and plumbing repairs.

2       6.     The true names and capacities of Defendants sued herein as DOES 1 through 500,

3   inclusive, whether individual, corporate, associate, or otherwise, are unknown to PLAINTIFFS who

4   therefore sues such Defendants by such fictitious names.  When their true names and capacities are

5   ascertained, PLAINTIFFS will amend this Complaint by asserting their true names and capacities

6   herein. PLAINTIFFS are informed and believe, and thereon allege, that each of the fictitiously named

7   Defendants is responsible in some manner for the occurrences herein alleged, and that PLAINTIFFS'

8   damages as herein alleged were proximately caused by those Defendants.

9       7.     PLAINTIFFS are informed and believe, and thereon allege, that at all times relevant

10   herein, each employer of employees had advance knowledge of the unfitness of the employee and

11   employed them with a conscious disregard of the rights or safety of others and authorized and/or

12   ratified the wrongful conduct and/or was personally guilty of oppression, fraud, or malice.  Further,

13   PLAINTIFFS are informed and believe, and thereon allege, that at all times relevant herein, the

14   advance knowledge and conscious disregard, the authorization, the ratification, and/or act of

15   oppression, fraud, and/or malice was on the part of an officer, director, and/or managing agent of the

16   corporation.

17                           **II.**

18               **OPERATIVE FACTS**

19       8.     PLAINTIFF TIMOTHY WAGGONER, and OWNER DEFENDANTS and/or

20   MANAGER DEFENDANTS entered into a written lease agreement by terms of which OWNER

21   DEFENDANTS and/or MANAGER DEFENDANTS rented the Subject Property to PLAINTIFFS.

22   Minor TIMIYA WAGONNER occupied the Subject Property.  Pursuant to the Lease, OWNER

23   DEFENDANTS and/or MANAGER DEFENDANTS, among other things, expressly and impliedly

24   warranted that the Subject Property was and would remain habitable and that they would maintain and

25   repair the Subject Property in such a manner as to keep it habitable and safe to occupy.

26       9.     During PLAINTIFFS' occupancy of the Subject Property it was defective in repair and

27   maintenance, in that, among other things:  the building permitted intrusion of water into its interior;

28   the Subject Property contained excessive condensation;  the Subject Property contained plumbing

MILLER LAW, INC.
Post Office Box 700
Folsom, California 95763-0700
(916) 351-1200

1   leaks; the Subject Property contained leaking sinks, bathtubs and/or shower enclosures; the Subject

2   Property was damp; the Subject Property contained harmful mold; the Subject Property contained

3   harmful dust mites; the Subject Property was not properly maintained and/or repaired. These

4   conditions are hereinafter collectively referred to as the "Defects." None of these conditions was

5   known to PLAINTIFFS at the time PLAINTIFFS moved into the Subject Property. In fact,

6   Defendants, and each of them, had concealed these and other conditions from PLAINTIFFS.

7        10.    Throughout their occupancy of the Subject Property, PLAINTIFFS notified

8   Defendants, both orally and in writing, of the defective and dangerous conditions listed above, and

9   others, and requested that Defendants have them repaired. In addition to this actual notice,

10   PLAINTIFFS are informed and believe, and thereon allege, Defendants had constructive notice of the

11   defective and dangerous conditions since Defendants had knowledge of these defects since they had

12   previously attempted to repair some of them and/or were on notice of them by virtue of their visits to

13   the Subject Property or by virtue of their creation of the defects due to their failure to maintain and

14   repair the Subject Property. Despite these requests and Defendants' knowledge of the defective and

15   dangerous conditions as described in this Complaint, Defendants failed and refused to repair the

16   conditions and Defects, have failed to timely repair the Subject Property and/or have done so in a

17   negligent and/or unreasonable fashion.

18        11.    Based on the repeated representations and assertions by DEFENDANTS that they had

19   repaired any problems with the Subject Property and there was no need for worry or concern, and

20   based on PLAINTIFFS' observations it was not until mid December 2008 that PLAINTIFFS first

21   began to suspect and/or observe the presence of mold within the subject property. Further, it was not

22   until February 2009 that PLAINTIFFS first began to suspect or should have known or suspected that

23   the illnesses they experienced while living in the subject property may be connected with the

24   conditions found therein.

25        12.    Prior to February 2009, PLAINTIFFS neither knew nor suspected nor had reason to

26   know or suspect that she had been injured or the property damaged. Further, prior to this time,

27   PLAINTIFFS neither knew nor had reason to know or suspect that her damages, injuries and

28   symptoms or illnesses were caused by the conditions of the Subject Property or any acts or omissions

MILLER LAW, INC.
Post Office Box 700
Folsom, California 95763-0700
(916) 351-1200

1  of the DEFENDANTS. Prior to this time, PLAINTIFFS did not know or suspect DEFENDANTS had

2  done something wrong or that such acts or omissions had caused their damages or injuries on or about

3  May 2010, PLAINTIFFS filed a written claim against the governmental DEFENDANTS. A true and

4  correct copy of this claim is attached hereto as Exhibit B..

**III.**

**FIRST CAUSE OF ACTION**

(Negligence)

**A.**

**General Negligence**

**(All PLAINTIFFS Against All Defendants)**

11      13.    PLAINTIFFS hereby adopt and incorporate by reference paragraphs 1 through 12,

12  inclusive, and re-plead the allegations contained therein as though fully set forth herein.

13      14.    Defendants, and each of them, owed duties of care to PLAINTIFFS to maintain and

14  repair the Subject Property. Defendants and each of them, breached these duties and failed to exercise

15  ordinary and reasonable care in the ownership, possession, rental, leasing, management, maintenance,

16  repair, control and supervision of the Subject Property by, among other things: failing to maintain

17  and/or repair the Subject Property; failing to provide, maintain and repair a building impervious to

18  water intrusion; failing to repair intrusion of water into the Subject Property's interior; failing to

19  provide buildings with walls, windows and other building structures which were impervious to water

20  and in a non-deteriorated state; failing to properly clean water damaged building materials; failing to

21  provide a property without excessive condensation ; failing to provide a premises without leaking

22  sinks, bathtubs and/or shower enclosures; failing to provide a property without excessive moisture and

23  dampness; failing to provide a property without the Defects; failing to provide a property free from

24  toxic mold and dust mites and failing to remedy the same.

25      15.    In addition, Defendants, and each of them, failed to exercise ordinary and reasonable

26  care in the repair of water leaks in the interior of the Subject Property; failed to properly inspect and

27  investigate the sources of water leaking within the Subject Property; made no efforts and failed to

28  properly dry out areas of water saturated building materials within the Subject Property; failed to

MILLER LAW, INC.
Post Office Box 700
Folsom, California 95763-0700
(916) 351-1200

1 remove water saturated building materials within the Subject Property caused by the water leaks;

2 failed to properly and timely investigate, remediate, clean, and remove toxic mold and dust mites,

3 failed to properly inspect, address, fix and/or repair the Defects.

4   16.   In addition, the Defendants, and each of them, breached their duties of care to

5 PLAINTIFFS and failed to exercise ordinary and reasonable care in that they failed to warn and/or

6 instruct PLAINTIFFS that the moisture and water within the Subject Property, including mold, was

7 potentially hazardous to PLAINTIFFS' health and safety; made no efforts and failed to warn or

8 instruct PLAINTIFFS of the proper steps to which were necessary to correct the water leaks within

9 the Subject Property, and/or safely remove the mold infested building materials and/or safely

10 remediate and clean the personal and real property; failed to warn or instruct PLAINTIFFS that the

11 dust mites within the Subject Property were potentially hazardous to PLAINTIFFS' health and safety;

12 made no effort and failed to warn or instruct PLAINTIFFS in the proper steps which are necessary to

13 eliminate the dust mites within the Subject Property.

14   17.   As a proximate result of the negligence of Defendants, and each of them, PLAINTIFFS

15 were seriously injured in their health, strength, and activity, sustaining injuries to their bodies, and

16 shock and injuries to their nervous systems and persons, all of which injuries have caused and

17 continue to cause PLAINTIFFS great mental, physical, and nervous pain, suffering, and emotional

18 distress.

19   18.   As a further direct and proximate result of Defendants' negligence, PLAINTIFFS were

20 unable to use and enjoy the Subject Property, entitling PLAINTIFFS to a 100% reimbursement of the

21 rent paid for the duration of the time she lived in the Subject Property.

22   19.   As a further proximate result of Defendants' negligence, PLAINTIFFS were required

23 to incur moving and relocation expenses and other incidental and consequential damages, including

24 attorneys' fees and costs, in an amount according to proof.

25   **IV.**

26   **SECOND CAUSE OF ACTION**

27   **(Breach of Contract)**

28   (PLAINTIFFS TIMOTHY WAGGONER Against Defendants *CAMP PENDLETON &*

MILLER LAW, INC.
Post Office Box 700
Folsom, California 95763-0700
(916) 351-1200

*QUANTICO HOUSING; LLC; LPC PENDLETON QUANTICO PM, INC. AND DOES 1*
*THROUGH 20 )*

20.    PLAINTIFFS hereby adopt and incorporate by reference paragraphs 1 through 19, inclusive, and re-plead the allegations contained therein as though fully set forth herein.

21.    Attached hereto as ·Exhibit A is a true and correct copy of the lease between PLAINTIFFS and the aforementioned DEFENDANTS. These DEFENDANTS have failed and continue to fail to perform the terms and conditions of the Lease by which they are bound. Defendants breached the Lease by, among other things, failing to provide a habitable and safe living environment; failing to maintain and repair the Subject Property; improperly repairing the Subject Property; preventing PLAINTIFFS' quiet enjoyment of the Subject Property; failing to maintain and repair the Subject Property; wrongfully demanding and collecting rent notwithstanding uninhabitable conditions; wrongfully threatening and attempting to evict PLAINTIFFS; and creating and/or failing to repair the Defects.

22.    PLAINTIFFS performed all duties, conditions and obligations which were required of PLAINTIFFS pursuant to the terms of the Lease.

23.    The breaches of the Lease by Defendants, and each of them, herein alleged are the direct and proximate cause of damages and injuries to PLAINTIFFS as described herein.

24.    Pursuant to the Lease PLAINTIFFS are entitled to their attorneys' fees and costs.

**V.**

**THIRD CAUSE OF ACTION**

**(Breach of Implied Warranty of Habitability)**

**A.**

**Common Law Breach of Implied Warranty of Habitability**

**(PLAINTIFF TIMOTHY WAGGONER Against LINCOLN BP MANAGEMENT, INC.;**
**CAMP PENDLETON & QUANTICO HOUSING; LLC; LPC PENDLETON QUANTICO PM,**
**INC.; LINCOLN MILITARY PROPERTY MANAGEMENT, INC; LINCOLN PROPERTY**
**COMPANY; TEXAS LINCOLN PROPERTY)**

25.    PLAINTIFFS hereby adopt and incorporate by reference paragraphs 1 through 24,

MILLER LAW, INC.
Post Office Box 700
Folsom, California 95763-0700
(916) 351-1200

1  inclusive, and re-plead the allegations contained therein as though fully set forth herein.

2      26.   The Subject Property was unfit for human occupation. The warranty of habitability was

3  breached, by among other things, defective maintenance and/or repair permitting water intrusion into

4  and leaks within the Subject Property and resulting toxic mold growth and dust mites; deteriorated and

5  rotting walls, and other building structures; the presence of vermin, including dust mites; damp rooms;

6  general dilapidation and/or lack of or improper maintenance; excessive window condensation; and the

7  presence of the Defects.

8      27.   PLAINTIFFS repeatedly notified Defendants, both orally and in writing, of the

9  defective and dangerous conditions described herein, among others, and requested that Defendants·

10  have them repaired. In addition, PLAINTIFFS are informed and believe, and thereon allege, that

11  Defendants had constructive notice of these conditions by virtue of the fact that they were aware of

12  the Defects prior to PLAINTIFFS entering into the lease and were also aware of these defects by their

13  visits to the Subject Property and other housing units prior to and during PLAINTIFFS' tenancy.

14  Defendants failed and refused to repair said defective conditions within a reasonable time or at all.

15  Accordingly, PLAINTIFFS are informed and believe, and thereon allege, that Defendants had actual

16  and/or constructive knowledge of these defective and dangerous conditions, but failed to remedy them.

17      28.   PLAINTIFFS paid Defendants monthly rent during the time they occupied the Subject

18  Property.

19      29.   The Subject Property as it existed in its defective and dangerous condition was not

20  caused by PLAINTIFFS' acts or omissions. Further, the Subject Property had no rental value

21  whatsoever as a result of its defective and dangerous conditions.

22      30.   As a proximate result of Defendants' breach of the implied warranty of habitability and

23  their failure to repair the defective and dangerous conditions in the Subject Property or have them

24  repaired within a reasonable time or at all, PLAINTIFFS sustained general damages, emotional

25  distress, physical injuries, mental anguish, anxiety, worry, discomfort, pain, suffering, economic

26  losses, loss of rent payments, all in an amount unknown to them at this time. PLAINTIFFS shall seek

27  leave to amend this pleading when these amounts have been ascertained.

28                              B.

MILLER LAW, INC.
Post Office Box 700
Folsom, California 95763-0700
(916) 351-1200

**Statutory Breach of the Implied Warranty of Habitability**

(PLAINTIFFS TIMOTHY WAGGONER  LINCOLN BP MANAGEMENT, INC.; CAMP PENDLETON & QUANTICO HOUSING; LLC; LPC PENDLETON QUANTICO PM, INC.; LINCOLN MILITARY PROPERTY MANAGEMENT, INC; LINCOLN PROPERTY COMPANY; TEXAS LINCOLN PROPERTY)

31.    PLAINTIFFS hereby adopt and incorporate by reference paragraphs 1 through 30, inclusive, and re-plead the allegations contained therein as though fully set forth herein.

32.    Defendants, and each of them, have violated statutes, including, inter alia, California Civil Code section 1941, et seq., and California Health & Safety Code section 17920.3 related to the implied warranty of habitability.  Specifically, Defendants have violated Civil Code section 1941.1, subdivision (a), which provides that a premises is untenantable if it lacks:

"(a)  Effective waterproofing and weather protection of roof and exterior walls, including unbroken windows and doors.

(b) Plumbing or gas facilities which conformed to applicable law in effect at the time of installation, maintained in good working order.

\* \* \*

(f) Building, grounds and appurtenances at the time of the commencement of the lease or rental agreement in every part clean, sanitary, and free from all accumulations of debris, filth, rubbish, garbage, rodents and vermin, and all areas under control of the landlord kept in every part clean, sanitary, and free from all accumulations of debris, filth, rubbish, garbage, rodents and vermin.

\* \* \*

(h) Floors, stairways, and railings maintained in good repair."

33.    Defendants, and each of them, have also violated Health & Safety Code section 17920.3 which provides in part:

"Any building or portion thereof including any dwelling unit, guest room or suite of rooms . . . in which there exists any of the following listed conditions . . . shall be deemed and hereby is declared to be a substandard building:

(a) Inadequate sanitation shall include, but not be limited to the following:

(1)  Lack of or improper water closet, lavatory or bathtub or shower in a dwelling unit.

\* \* \*

(5) Lack of hot or cold running water to plumbing fixtures in a dwelling unit.

MILLER LAW, INC.
Post Office Box 700
Folsom, California 95763-0700
(916) 351-1200

* * *

(11) Dampness of habitable rooms.

(12) Infestation of insects, vermin or rodents as determined by the health officer.

(13) General dilapidation or improper maintenance.

* * *

(b) Structural hazards [which] shall include, but not be limited to, the following:

(1) Deteriorated or inadequate foundations.

(2) Defective or deteriorated flooring or floor supports.

* * *

(4) Members of walls, partitions, or other vertical supports that split, lean, list, or buckle due to defective material or deterioration.

* * *

(6) Members of ceilings, roofs, ceiling and roof supports, or other horizontal members which sag, split or buckle due to defective material or deterioration.

(c) Any nuisance.

* * *

(e) All plumbing [in working order].

* * *

(g) Faulty weather protection, which shall include, but not be limited to the following:

(1) Deteriorated, crumbling or loose plaster.

(2) Deteriorated or ineffective waterproofing of exterior walls, roof, foundations, or floors, including broken windows or doors.

(3) Defective or lack of weather protection for exterior wall coverings, including lack of paint, or weathering due to lack of paint or other approved protective covering.

(4) Broken, rotted, split, or buckled exterior wall coverings or roof coverings.

* * *

(j) Those premises on which an accumulation of weeds, vegetation, junk, dead organic matter, debris, garbage, offal, rodent, harborages, stagnant water, combustible materials, and similar materials or conditions constitute fire, health, or safety hazards.

(k) Any building or portion thereof which is determined to be an unsafe building due to inadequate maintenance, in accordance with the latest edition of the Uniform

MILLER LAW, INC.
Post Office Box 700
Folsom, California 95763-0700
(916) 351-1200

1    Building Code."

2

3        34.    PLAINTIFFS repeatedly notified Defendants, both orally and in writing, of these

4    unsanitary, unhealthy and/or defective conditions.  In addition, PLAINTIFFS are informed and

5    believe, and thereon allege, that Defendants had constructive notice of these conditions by virtue of

6    the fact that they were aware of these Defects prior to PLAINTIFFS entering into the Lease and were

7    also aware of these defects by their visits to the Subject Property and other houseguests prior to and

8    during PLAINTIFFS' tenancy. Defendants failed and refused to repair these dangerous and defective

9    conditions within a reasonable time or at all.  Accordingly, PLAINTIFFS are informed and believe,

10   and thereon allege, that Defendants had actual and/or constructive knowledge of these defective and

11   dangerous conditions, but failed to remedy them.

12       35.    PLAINTIFFS paid Defendants rent during the time they occupied the Subject Property.

13       36.    The Subject Property as it existed in its dangerous and defective conditions were not

14   caused by the acts or omissions of PLAINTIFFS.  Further, the Subject Property as it existed in its

15   defective and dangerous condition had no rental value whatsoever as a result of its defective and

16   dangerous conditions.

17       37.    As a proximate result of Defendants' breach of the statutory duty of implied warranty

18   of habitability and their failure to repair the defective and dangerous conditions or have them repaired

19   within a reasonable time or at all, PLAINTIFFS sustained general damages, economic loss,

20   discomfort, annoyance, physical injury, emotional distress, mental anguish, loss of rent, worry and

21   anxiety all to their damage as set forth elsewhere in this Complaint.

22                                    **VI.**

23                        **FOURTH CAUSE OF ACTION**

24                              **(Nuisance)**

25                   **(All PLAINTIFFS Against All Defendants)**

26       38.    PLAINTIFFS hereby adopt and incorporate by reference paragraphs 1 through 37,

27   inclusive, and re-plead the allegations contained therein as though fully set forth herein.

28       39.    The defective and dangerous conditions of the Subject Property as alleged in this

MILLER LAW, INC.
Post Office Box 700
Folsom, California 95763-0700
(916) 351-1200

1  Complaint were created and/or maintained by Defendants and constituted a continuing nuisance within

2  the meaning of California common law, California Civil Code sections 3479, 3481 and California

3  Code of Civil Procedure section 731 in that they deprived PLAINTIFFS of the safe, healthy and

4  comfortable use of the Subject Property, were injurious to PLAINTIFFS' health, were indecent and

5  offensive to the senses, were an obstruction to the free use of the Subject Property and interfered with

6  PLAINTIFFS' comfortable use of the Subject Property and enjoyment of life and the Subject Property.

7      40.    As a proximate result of the creation and/or maintenance of the nuisance by

8  Defendants, and each of them, PLAINTIFFS suffered discomfort, annoyance, emotional distress,

9  mental anguish, worry, anxiety and pain and suffering in a sum well in excess of the minimum

10  jurisdiction of this Court.

11      41.    As a further, direct and proximate result of the creation and/or maintenance of the

12  nuisance, PLAINTIFFS were seriously injured in their health, strength, and activity, sustaining injury

13  to their bodies, and shock and injuries to their nervous systems and persons, all of which injuries have

14  caused and continue to cause PLAINTIFFS great mental, physical, and nervous pain and suffering.

15      42.    In creating and/or maintaining the nuisance, Defendants, and each of them, acted with

16  full knowledge of the consequences thereof and the damages and injuries being caused to

17  PLAINTIFFS. Despite this knowledge, Defendants, and each of them, failed to abate the nuisance by

18  repairing the defective and dangerous conditions of the Subject Property or causing them to be

19  repaired. Defendants' failure to act was both oppressive and malicious within the meaning of Civil

20  Code section 3294 in that it subjected PLAINTIFFS to cruel and unjust hardship in willful and

21  conscious disregard of PLAINTIFFS' rights and safety, thereby entitling PLAINTIFFS to an award

22  of exemplary and/or punitive damages. Defendants' acts included, without limitation, failure to put

23  the Subject Property into a condition fit for human occupation at the time of renting it to

24  PLAINTIFFS; failing to maintain and repair the Subject Property leading to water intrusion/leaks and

25  the development of toxic molds; failure to repair the defective and dangerous conditions or have them

26  repaired within a reasonable time after PLAINTIFFS notified them or at all; concealing the dangerous

27  conditions and presence of toxic mold from PLAINTIFFS; misinforming PLAINTIFFS regarding the

28  health effects of toxic mold; failing to disclose test results for the presence of toxic, harmful molds;

MILLER LAW, INC.
Post Office Box 700
Folsom, California 95763-0700
(916) 351-1200

1  failure to warn PLAINTIFFS regarding the presence of toxic, harmful molds; failing to clean and/or

2  abate the harmful, toxic molds within the Subject Property; threatening and attempting to evict

3  PLAINTIFFS, and blaming PLAINTIFFS for the condition of the Subject Property herein. These acts,

4  and others, were oppressive and malicious within the meaning of Civil Code section 3294 in that they

5  subjected PLAINTIFFS to cruel and unjust hardship and were conducted with willful and conscious

6  disregard of PLAINTIFFS' rights and safety, thereby entitling PLAINTIFFS to an award of exemplary

7  and/or punitive damages.

### PRAYER

9  WHEREFORE, PLAINTIFFS pray for judgment as follows:

10  1.  For special damages and general damages in amounts in excess of the minimum

11  jurisdiction of this Court;

12  2.  For past and future medical and related expenses according to proof;

13  3.  For consequential and incidental damages including, without limitation, moving and

14  relocation expenses in an amount according to proof;

15  4.  For loss of past and future earnings, wages and income according to proof;

16  5.  For loss of earning capacity;

17  6.  For rental reimbursement in an amount according to proof, plus interest;

18  7.  For pre-judgment interest;

19  8.  For attorneys' fees;

20  9.  For cost of suit herein;

21  10.  For punitive and exemplary damages;

22  11.  For statutory damages pursuant to the California Civil Code; and

23  12.  For such further and other relief as the Court deems just and proper.

24  PLAINTIFFS DEMAND A TRIAL BY JURY.

25  DATED: November 17, 2010                    MILLER LAW, INC.

27  By: _____

28       JOHN C. MILLER, JR.
         State Bar No.  143323

MILLER LAW, INC.
Post Office Box 700
Folsom, California 95763-0700
(916) 351-1200

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1.  Submit to Appropriate Federal Agency: <br><br> Office of the Judge Advocate General <br> Tort Claims Unit Norfolk <br> 9620 Maryland Avenue, Suite 205 <br> Norfolk, VA 23511-2949 | 2.  Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code. <br><br> Timothy Waggoner - C/O Miller Law, Inc., 1745 Creekside Drive, Folsom, CA 95630 |
|---|---|

| 3.  TYPE OF EMPLOYMENT <br> ☒ MILITARY  ☐ CIVILIAN | 4.  DATE OF BIRTH <br> 0/15/1984 | 5.  MARITAL STATUS <br> Seperated | 6.  DATE AND DAY OF ACCIDENT <br> 2/2009 and continuing | 7.  TIME (A.M. OR P.M.) <br> 1200 a.m. |
|---|---|---|---|---|

8.  BASIS OF CLAIM (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary).

See attached detailed description –

Address of contaminated property - 118 Martin Street, Unit 118, Oceanside, CA 92058

*(circular stamp: MAY 2010 TCU NORFOLK)*

| 9.  | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

Same as Claimant

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

All household belongings, soft goods and personal property was destroyed or damaged.

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

Lung damage due to mold exposure.  Critical condition - extended hospital stay - loss of military career.

| 11. | | WITNESSES |
|---|---|---|
| **NAME** | | **ADDRESS** (Number, Street, City, State, and Zip Code) |
| Timiya Waggoner | | 4501 Collwood Blvd., Suite 1, <br> San Diego, CA 92115 |

| 12.  (See instructions on reverse). | AMOUNT OF CLAIM (in dollars) | | |
|---|---|---|---|
| 12a.  PROPERTY DAMAGE | 12b.  PERSONAL INJURY | 12c.  WRONGFUL DEATH | 12d.  TOTAL (Failure to specify may cause forfeiture of your rights). |
| 65,000.00 | 2,000,000.00 | N/A | 2,065,000.00 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a.  SIGNATURE OF CLAIMANT (See instructions on reverse side). <br> *J.V. Miller as attorney for claimant* | 13b.  PHONE NUMBER OF PERSON SIGNING FORM <br> 916-351-1200 | 14.  DATE OF SIGNATURE <br> 04/30/2010 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

Authorized for Local Reproduction
Previous Edition is not Usable

95-109

NSN 7540-00-634-4046

STANDARD FORM 95 (REV. 2/2007)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property.

| 15. Do you carry accident insurance? ☐ Yes   If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number. | ☒ No |
|---|---|

| 16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible? ☐ Yes  ☒ No | 17. If deductible, state amount.  N/A |
|---|---|

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts).

N/A

| 19. Do you carry public liability and property damage insurance? ☐ Yes   If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code). ☒ No |
|---|

## INSTRUCTIONS

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a seperate claim form.**

### Complete all items - Insert the word NONE where applicable.

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY

DAMAGES IN A SUM CERTAIN FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN TWO YEARS AFTER THE CLAIM ACCRUES.

Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

The amount claimed should be substantiated by competent evidence as follows:

(a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b) In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c) In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

(d) Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
  A. Authority: The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. Principal Purpose: The information requested is to be used in evaluating claims.
C. Routine Use: See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. Effect of Failure to Respond: Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid."

## PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC 20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

STANDARD FORM 95 REV. (2/2007) BACK

**ATTACHMENT TO FEDERAL CLAIM FORM 95-109**
**CLAIMAINTS: WAGGONER**

Claimant Timothy Waggoner nad Timaya Waggoner moved into a rental property located at 118 Martin Street, Unit 118, Oceanside, California 92058 in or about August 2008 (hereinafter the "Subject Property").

The Subject Property is owned, managed or operated by the U.S. Navy/Federal Government through various entities which include the following:

    1.    Camp Pendleton & Quantico Housing LLC;

    2.    LPC Pendleton Quantico PM, Inc.;

    3.    Lincoln Military Property Management, Inc.;

    4.    Lincoln BP Management, Inc.;

    5.    Lincoln Property Company.

During Claimant's occupancy of the Subject Property, it was not properly maintained and repaired leading to water intrusion and leaks. This condition was first obsered and suspected by Claimant in 2/09. Thereafter, mold within the Subject property was discovered by Claimant. The resulting water damage led to development of toxic, harmful molds. These molds damaged and destroyed claimant's personal property contained within the Subject Property and also caused significant personal injuries. Such injuries required prolonged hospitalization and claimant's loss of a military career.

# EXHIBIT B

# LEASE AGREEMENT
## Marine Corps Base Camp Pendleton

| COMMUNITY Stuart Mesa | | | |
|---|---|---|---|
| UNIT NUMBER 118 | UNIT ADDRESS 118 MARTIN STREET | | UNIT TYPE 2/2 |
| CITY Oceanside | COUNTY San Diego County | STATE California | ZIP 92058 |
| 1. CURRENT DATE 05/27/2008 | 2. LEASE COMMENCEMENT DATE (MM/DD/YYYY) 05/27/2008 | | 3. LEASE END DATE 11/26/2008 6 months from the commencement date (see paragraph 2) |

**4. RESIDENT(S) - INDIVIDUAL(S) RESPONSIBLE FOR LEASE (All individuals 18 years of age or older)**

| a. NAME (Last, First, Middle Initial) | b. SSN | c. Pay Grade | d. Branch | e. Duty Station/ UIC | f. Home Phone |
|---|---|---|---|---|---|
| WAGGONER, TIMOTHY L | 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 | E3 | USMC | M01169 | 619-723-5972 |
| a. NAME (Last, First, Middle Initial) | b. SSN | c. Pay Grade | d. Branch | e. Duty Station/ UIC | f. Home Phone |
| WAGGONER, BRITTANY | 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 | CIV | | | 619-723-5823 |

| 5. MONTHLY RENT 1554.00 | As defined in paragraphs 3, 4 and 5 |
|---|---|
| 6. SECURITY DEPOSIT AMOUNT (Excluding additional amount for Satellite Dish) | Waived for service members using allotment or UDEFT and one month's rent for all others |
| 7. LATE CHARGE (Applied after the 5th of the Month) | $ 25.00 |
| 8. RETURNED CHECK CHARGE | $25.00 for the first returned check and $35.00 for each subsequent check returned |

9. UTILITIES PAID BY OWNER   All paid by Owner except telephone, cable TV and unreasonable utility usage pursuant to paragraph 8

10. RENT PAYABLE TO MANAGEMENT OFFICE: Lincoln BP Management, Inc., Building 1536, Oceanside, CA 92054, (760) 385-5310

**11. LIST OF ALL OCCUPANTS (Do not list any from Number 4 above )**

| 1a. NAME (Last, First, Middle Initial) | b. DATE OF BIRTH | c. RELATIONSHIP |
|---|---|---|
| WAGGONER, TIMIYAH | 01/20/2008 | DAUGHTER |
| 2a. | b. | c. |
| 3a. | b. | c. |
| 4a. | b. | c. |
| 5a. | b. | c. |
| 6a. | b. | c. |

**12. EMERGENCY CONTACT**

| a. NAME WILLY BROOKS | b. RELATIONSHIP BISHOP | c. TELEPHONE 619-820-0464 |
|---|---|---|

13. SPECIAL PROVISIONS AND ADDITIONAL AGREEMENTS:

READ AND ACCEPTED BY:

X_____
RESIDENT                                          PRINTED NAME

_____
RESIDENT                                          PRINTED NAME

CAMP PENDLETON & QUANTICO HOUSING, LLC
By: Lincoln BP Management, Inc., Authorized Agent

X Julia Peters                                    Julia Peters
OWNER                                             PRINTED NAME

THIS LEASE AGREEMENT (this "Lease") is made on the "Current Date" listed in Box 1 of Page 1, between Camp Pendleton & Quantico Housing, LLC, owner of the subject Premises (the "Owner"), acting by and through its authorized agent, LPC Pendleton Quantico PM, Inc ("Agent") and the individuals referenced in this Lease in Box 4 of Page 1 (individually and collectively referred to as "Resident").

THE PARTIES AGREE AS FOLLOWS:

1.  **Parties to Lease.** Subject to the terms and conditions of this Lease, Owner rents to Resident and Resident rents from Owner, the unit referenced on Page 1 of this Lease (the "Premises"). The Premises is to be used for residential use only, with exceptions permitted solely upon written approval of Owner. The Premises is managed by LPC Pendleton Quantico PM, Inc., whose address and phone number are specified in Box 10 of Page 1. LPC Pendleton Quantico PM, Inc. is authorized to manage the Premises on behalf of Owner and to give and accept notices, demands and service of process on behalf of the Owner.

2.  **Term/Automatic Renewal.** The term of this Lease is for a six (6) month period commencing upon the date set forth in Box 2 of Page 1 or the effective date of the transition to Public Private Venture Housing (if the Community is transitioning to Public Private Venture Housing), whichever is later. After expiration of the six (6) month term, this Lease will automatically convert to a month-to-month tenancy. Either party may terminate the month-to-month tenancy after service of a written thirty (30) day notice of termination to the other party. If Resident has been in possession for one year or longer, Owner shall provide a sixty (60) day notice of termination unless termination is due to Resident's breach in which event Owner shall provide notice as required by law. Such notices may be given on any date.

3.  **Rent.**

    A.  Resident agrees to pay "Rent" equal to the Basic Allowance for Military Housing (the "BAH") at the Resident's duty station of the pay grade of the Resident service member. If more than one service member is listed in Box 4 of Page 1, the Rent for the Premises will be one BAH equal to the higher BAH (at the with dependent rate) of the Resident service members. Rent is inclusive of a utility allowance as explained in Paragraph 8. If Resident's BAH rate changes at any time for any reason, Resident must notify Owner within fifteen (15) business days of the change.

    B.  If Resident's allotment or UDEFT is terminated while Resident is still in possession of the Premises without written permission from Owner, Resident will be considered in material breach of this Lease, unless such termination is beyond Resident's fault or control.

    C.  Rent is payable on the 2nd calendar day of each month. Rent for the first month of the Lease term is payable on the 2nd calendar day of the month following the month in which the Commencement Date occurs. Rent not paid or Postmarked by the 5th calendar day will be considered late and will be subject to a late charge as set forth in Box 7 of Page 1.

    D.  Residents that do not qualify for BAH will pay the rental amount listed in Box 5 of Page 1.

    E.  Security Deposit: Unless waived as set forth in Box 6 on Page 1, Resident agrees to pay one month's Rent as a security deposit. Security deposit will be transferred to and held by Owner.

        All or any portion of the security deposit may be used, as reasonably necessary, to: (i) cure Resident's default in payment of Rent (which includes late charges, non-sufficient funds fees or other sums due); (ii) repair damage, excluding ordinary wear and tear, caused by Resident or by a guest or licensee of Resident; (iii) clean Premises, if necessary, upon termination of the tenancy; and (iv) replace or return personal property or appurtenances.

        SECURITY DEPOSIT SHALL NOT BE USED BY RESIDENT IN LIEU OF PAYMENT OF LAST MONTH'S RENT. If all or any portion of the security deposit is used during the tenancy, Resident agrees to reinstate the security deposit within five days after written notice is delivered to Resident. Within three weeks after Resident vacates the Premises, Owner shall furnish or return by personal delivery or first class mail postage prepaid to Resident: (1) an itemized statement indicating the amount of any security deposit received and the basis for its disposition; and (2) any remaining portion of the security deposit.

        Security deposit will not be returned until all Residents have vacated the Premises. Any security deposit returned by check shall be made out to all Residents named on this Lease, or as subsequently modified.

        No interest will be paid on security deposit.



4.   **Unit Diary Entry Electronic Funds Transfer (UDEFT) and Allotments.**

A.   Rent may be paid through a UDEFT if applicable. If a UDEFT is not applicable Rent may be paid through an allotment, if available. By signing this Lease and electing not to pay the security deposit set forth in Box 6 of Page 1, Resident agrees to have Resident's BAH converted into a UDEFT or an allotment payable to Camp Pendleton & Quantico Housing, LLC. If an allotment is started before the 10th of the month of move-in, then Resident is responsible for paying the prorated amount of Rent due, which covers Rent from the date of move in until the 1st of the following month. If an allotment is started after the 10th of the month of move-in, then Resident is responsible for paying all rent and charges due until the allotment has commenced. Allotments will be verified through Resident's Leave and Earning Statement (the "LES"). If Resident is not receiving Resident's BAH at the time of entering into this Lease, payment is not due until the date the Resident receives it, but Rent is owed from the Commencement Date of this Lease. It is Resident's responsibility to make adjustments in the allotment to reflect any changes in Resident's BAH rate.

B.   Rent and all other charges owed by Resident pursuant to this Lease and not paid by UDEFT or allotment will be payable by personal check, certified check, Automated Clearing House (A.C.H.) Transfer or money order at the address specified in Box 10 on Page 1.

5.   **Late Charge; Returned Checks.**

A.   Resident acknowledges either late payment of Rent or issuance of a returned check may cause Owner to incur costs and expenses, the exact amounts of which are extremely difficult and impractical to determine. These costs may include, but are not limited to, processing, enforcement and accounting expenses, and late charges imposed on Owner. If any installment of Rent due from Resident is not received by Owner postmarked by the 5th calendar day of the month, Resident shall pay to Owner a one time late charge for such monthly installment as set forth in Box 7 of Page 1. If a check is returned, Resident shall pay to Owner $25.00 as a Returned Check charge for the first returned check and $35.00 as a Returned Check charge for each additional returned check. Late charges and Returned Check charges shall be deemed additional Rent.

B.   Resident and Owner agree that these charges represent a fair and reasonable estimate of the costs Owner may incur by reason of Resident's late or Returned Check payment. Any Late Charge or Returned Check charge shall be paid with the current installment of Rent. Owner's acceptance of any Late Charge or Returned Check charge shall not constitute a waiver as to any default of Resident. Owner's right to collect a Late Charge or Returned Check charge shall not be deemed an extension of the date Rent is due under Paragraph 3 or prevent Owner from exercising any other rights and remedies under this Lease and as provided by law.

6.   **Condition of Premises Upon Commencement Date.** Either Owner or Resident may request and conduct a joint walk-through inspection of the Premises within three (3) Business Days of Resident first taking occupancy to determine the condition of the Premises. Existing residents at the time of privatization (who took occupancy prior to the Commencement Date) may request a joint walk-through inspection of the Premises, which will be scheduled within a reasonable period after request. Resident must provide to Owner in writing within two (2) Business days after taking occupancy or the walk-through, whichever is later, a description and request for repairs of any defects or damage to the Premises, including any furniture, furnishings, appliances, landscaping and fixtures. Otherwise, the Premises will be considered to be clean, safe and in good working condition. Owner will provide Resident with a Move-In Condition Form on which Resident may note the items that are damaged or not in operable condition.

7.   **Parking.** Parking is permitted in accordance with local traffic regulations. Parking space(s) are to be used for parking properly licensed and operable motor vehicles. Trailers, boats, campers, buses or trucks (other than pick-up trucks) are not permitted in the housing areas. Parking space(s) are to be kept clean. Vehicles leaking oil, gas or other motor vehicle fluids shall not be parked in this Community. Mechanical work on vehicles or storage of inoperable vehicles is not permitted in parking space(s) or elsewhere in this Community. Vehicles of Residents, occupants and invitees shall not block sanitation or mail pick-up areas.

8.   **Utilities.** Owner shall be responsible for the payment of water, sewer, trash and reasonable consumption of electric and gas during the term of this Lease.

9.   **Occupants and Permitted Use.** The Premises may be occupied only by people listed in Box 4 and Box 11 of Page 1. Residents may not allow any person not listed in this Lease to reside in the Premises in excess of thirty (30) days during any one-year period, without Owner approval. Residents must notify Owner, in writing and in accordance with the Community Guidelines & Policies (a copy of which is attached hereto and incorporated herein by reference), of visitors who plan to stay for more than fifteen (15) consecutive days. Owner may approve such requests on a case-by-case basis. Resident shall inform Owner of any change in occupants to be listed in Box 11 of Page 1. Resident agrees to use and maintain the Premises as a private residence only, except as permitted upon written approval of Owner

LEASE AGREEMENT                                         Page 4 of 11

10.  **Pets.** No animal or pet shall be kept on or about the Premises without Owner's prior written consent. However, existing pets previously approved by the prior landlord (Installation) shall be permitted upon execution of the Owner Pet Addendum.

11.  **Waterbeds.** Resident shall not use or have waterbeds on the Premises unless: (i) Resident obtains a valid waterbed insurance policy (in form and amount acceptable to Owner) and provides Owner with a copy of the policy; and (ii) the bed conforms to the floor load capacity of the Premises.

12.  **Rules/Regulations.**

     A.  Resident agrees to comply with the Community Guidelines & Policies and all other Owner rules and regulations that are at any time posted in the Community or delivered to Resident. Resident shall not, and shall ensure that guests and licensees of Resident shall not, disturb, annoy, endanger or interfere with other residents of the Community, or use the Premises for any unlawful purposes, including, but not limited to, using, manufacturing, selling, storing or transporting illicit drugs or other contraband, or violate any law or ordinance, or commit a waste or nuisance on or about the Premises.

     B.  Resident has been provided with and acknowledges receipt of a copy of the Community Guidelines & Policies

13.  **Repairs/Alterations.** Unless otherwise allowed by law, without Owner's prior written consent (which consent shall not be unreasonably withheld), (i) Resident shall not make any repairs, alterations or improvements in or about the Premises including: painting, wallpapering, adding or changing locks, installing antenna or satellite dish(es), or using screws, fastening devices, large nails or adhesive materials; (ii) Owner shall not be responsible for the costs of alterations or repairs made by Resident; (iii) Resident shall not deduct from Rent the costs of any repairs, alterations or improvements; and (iv) any deduction made by Resident shall be considered unpaid Rent. Resident agrees to indemnify and hold harmless Owner as to any mechanics lien recordation or proceeding caused by Resident's action or inaction. Residents are authorized to hang pictures and drapes.

14.  **Maintenance.** Resident shall properly use, operate and safeguard the Premises, including if applicable, any privately fenced yard, furniture, furnishings and appliances, and all mechanical, electrical, gas and plumbing fixtures, and keep them and the Premises clean and sanitary. Resident shall be responsible for checking and maintaining all smoke detectors and any additional phone lines installed for personal use beyond the one line and jack that Owner shall provide and maintain. Resident shall immediately notify Owner, in writing, of any problem, malfunction or damage. Resident shall be charged for damages caused by Resident, pets, guests or licensees of Resident, excluding ordinary wear and tear. Resident shall be charged for all damage to the Premises as a result of failure to report a problem in a timely manner. Resident shall be charged for repair of drain blockages or sloppages caused by Resident. Resident's failure to properly use, operate or maintain any item for which Resident is responsible shall give Owner the right to hire someone to perform such maintenance and charge Resident to cover the cost of such maintenance. Landscaping in privately fenced yards is the responsibility of the Resident while all other landscaping is the responsibility of the Owner.

15.  **Surrounding Neighborhood Conditions.** Resident has been provided with and acknowledges receipt of the Surrounding Land Uses Disclosure. In addition to the information set forth in the Surrounding Land Uses Disclosure, Resident is advised to satisfy himself or herself as to neighborhood or area conditions, including schools, proximity and adequacy of law enforcement, crime statistics, proximity of registered felons or offenders, fire protection, other governmental services, availability, adequacy and cost of any speed-wired, wireless internet connections or other telecommunications or other technology services and installations, proximity to commercial, industrial or agricultural activities, existing and proposed transportation, construction and development that may affect noise, view, or traffic; airport noise, noise or odor from any source, wild and domestic animals, other nuisances, hazards, or circumstances, cemeteries, facilities and condition of common areas, conditions and influences of significance to certain cultures and/or religions, and personal needs, requirements and preferences of Resident.

16.  **Database Disclosure.** Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet web site maintained by the Department of Justice at www.meganslaw.ca.gov. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides.

17.  **Waiver.** The waiver of either party of any breach will not be construed to be a continuing waiver of any later breach. If Owner receives the Rent with the knowledge of any violation of this Lease, this will not be deemed a waiver of the breach. No waiver by either party will exist unless made in writing and signed by all parties to this Lease.

18.  **Joint and Individual Liability.** If there is more than one Resident, each one shall be individually and completely responsible for the performance of all obligations of Resident under this Lease, jointly with every other Resident, and individually, whether or not in possession

PPV Pendleton Lease Agreement

INITIAL

19. <u>Entry onto the Premises.</u> Owner or its representatives may enter the Premises. (a) in case of emergency. (b) when Resident has abandoned or surrendered the Premises, (c) to make necessary or agreed repairs, alterations or improvements; (d) to supply necessary or agreed services, (e) to test smoke detectors, (f) to exhibit the Premises to prospective or actual purchasers, mortgagees, tenants, workers or contractors, (g) with your prior permission, or (h) as otherwise allowed by law. Except in cases of emergency, Owner will provide Resident with reasonable written notice of Owner's intent to enter and entry will be during normal business hours, 8:00 a.m. to 5:00 p.m. Monday through Friday 10:00 a.m. to 4:00 p.m. Saturday, (except national holidays). Resident agrees that forty-eight (48) hours written notice shall be reasonable and sufficient notice. Resident may be present; however, entry is not conditioned upon Resident's presence. In case of an emergency, Owner or its representatives may enter the Premises at any time without prior notice.

20. <u>Assignment and Sublet.</u> Resident shall not sublet all or any part of the Premises, or assign or transfer this Lease or any interest in it. Any assignment, transfer or subletting of the Premises, or this Lease by voluntary act of Resident, operation of law or otherwise, shall be null and void and, at the option of Owner, terminate this Lease.

21. <u>Breach by Resident.</u> If Resident breaches this Lease, Owner will be allowed, at Owner's discretion, but not by way of limitation, to exercise any or all remedies provided under law.

22. <u>Estoppel Certification.</u> If the Premises is sold or refinanced and Owner presents to Resident a "Resident's Certification of Terms - Estoppel Certification," Resident agrees to execute and deliver to Owner within ten (10) days the certificate acknowledging that this Lease is unmodified and in full force and effect, or in full force and effect as modified with Owner's consent, and stating the modifications. If Resident fails to do so, it will be deemed your acknowledgement that the certification, as submitted by Owner, is true and correct and may be relied upon by any lender or purchaser.

23. <u>Community Services and Facilities.</u> Owner may provide from time to time various services, equipment and facilities for residents use at their own risk. Resident acknowledges that the use of the services or facilities may be canceled or modified at any time, at the sole discretion of Owner, and Resident will not be entitled to any reduction in Rent. Resident must use the community services or facilities in compliance with the restrictions described in the Community Guidelines and Policies, which are subject to change during the term of this Lease. Resident may obtain additional copies of the Community Guidelines and Policies at the management office upon request. Resident agrees not to allow occupants and/or guests or invitees who do not comply with the Community Guidelines and Policies to use such facilities. Owner retains the right to deny any use or access to any Resident, occupant or guest who, in Owner's opinion, fails to comply with the Community Guidelines and Policies. Resident recognizes that Owner provides these services and facilities for residents only as a courtesy in connection with Resident's leasing of the Premises and Owner may not provide, attendants, supervisors or instructors, and Owner makes no representation that they have any expertise in operation or maintenance of the services or facilities.

24. <u>Hold Harmless.</u> Resident agrees that Owner, Agent and their representatives do not guarantee, warrant or assure the personal security of Resident or other occupants. Owner and Agent shall not be liable for death, losses or damages to person or property of Resident's guests or occupants, caused by theft, burglary, rape, assault, battery, arson, mischief, war, terrorism, vandalism, fire, smoke (including second-hand smoke from other residences), water, lightning, rain, flood, hail, explosion, sonic boom, interruption of, or spike in, utilities, electrical shock, latent defects, acts of nature or unexplained phenomena, lack of access to land under the control of the Federal Government, acts of other Residents, occupants or guests or, from any cause other than Owner's or Agent's gross negligence or willful misconduct or as otherwise provided by law. Except with respect to liability of Owner or Agent arising under law, Resident will indemnify and hold harmless Owner, Agent and their representatives from any and all liability including attorneys' fees due to death, loss or damage to the person or property of the Resident, occupants or others present at the Community with the Resident's consent from any cause other than Owner's or Agent's gross negligence or willful misconduct, and from any liabilities arising as the result of acts or omissions of the Resident, occupants or others present at the Community with Resident's consent.

25. <u>Security Devices.</u> Owner will have no duty to furnish (or to continue to furnish) alarms of any kind, security guards, or other security devices except as required by law. If Owner furnishes any security device in the Premises, Owner will have no obligation or duty to inspect, test or repair any security device unless Resident requests Owner to do so in writing. Resident must inspect the security devices upon move in, and will be given the opportunity to make comments on their condition on the "Move-In Condition Form". Owner will make needed repairs only after receiving a written request from Resident. Any and all security devices Resident installs must comply with all applicable laws, and Resident shall not change the entry locks or otherwise deny Owner access to the Premises. Resident agrees to release, indemnify and hold harmless Owner, Agent and their representatives from and against any liability (including attorneys' fees), arising from or in anyway relating to the use or malfunction of any security device installed by Resident.

26. <u>Intentionally Deleted.</u>

27.    Rental Information.  If rental history or other information on the Resident is requested by federal, state or local law enforcement agencies, Resident agrees that Owner may provide this information without recourse or further written authorization from Resident.

28.    Resident's Obligations Upon Vacating the Premises.

A.    Upon termination of this Lease, Resident shall: (i) give Owner all copies of all keys or opening devices to the Premises, including any common areas; (ii) vacate and surrender the Premises to Owner, empty of all persons and all of Resident's personal property; (iii) vacate any/all parking and/or storage space; (iv) clean and deliver the Premises, as specified in Paragraph 28(C) below, to Owner in the same condition as referenced in Paragraph 6, excepting ordinary wear and tear; (v) remove all debris; and (vi) give written notice to Owner of Resident's forwarding address.

B.    All alterations/improvements left by the Resident at termination and that are made by or caused to be made by Resident, with or without Owner's consent, shall be deemed abandoned and may be disposed of, or retained by, Owner upon termination.  Owner may charge Resident for restoration of the Premises to the condition it was in prior to any alterations/improvements.  Any personal property left in the Premises after Resident vacates or abandons the Premises may be removed by Owner and handled in accordance with California Civil Code Section 1980 et. seq. or as otherwise provided by applicable law.

C.    Right to Pre-Move-Out Inspection and Repairs as follows:

(i)    Within five (5) days after Resident provides Owner with a written notice of intent to vacate, Owner shall perform a pre-move out inspection and inform the Resident in writing of any potential move-out charges that may be assessed.  At Resident's option, Resident may attend such pre-move out inspection.  Resident shall be given an opportunity to remedy identified deficiencies prior to termination, consistent with the terms of this Lease.

(ii)    Any repairs or alterations made to the Premises as a result of this inspection shall be made at Resident's expense.  Repairs may be performed by Resident or through others, who have adequate insurance and licenses and are approved by Owner.  The work shall comply with applicable law, including governmental permit, inspection and approval requirements.  Repairs shall be performed in a good and workmanlike manner with materials of quality and appearance comparable to existing materials.  It is understood that exact restoration of appearance or cosmetic items following repairs may not be possible.

(iii)    Resident shall: (a) obtain receipts for repairs performed by others; (b) prepare a written statement indicating the repairs performed by Resident and the date of such repairs; and (c) provide copies of receipts and statements to Owner prior to termination.

D.    Final Move Out Inspection.  Owner shall perform a final move out inspection on or after the date Resident vacates the Premises.  At Resident's option, Resident may attend such final move out inspection.  The Resident will be charged a cleaning fee if the Premises is not properly cleaned.  The Resident will be assessed charges for any damages to the Premises, except ordinary wear and tear.

29.    Termination by Resident Prior to Expiration of Term.

A.    A Resident that is a military member shall have the right to terminate this Lease if: (i) the Resident receives permanent change of station orders; (ii) the Resident receives temporary duty or deployment orders equal to or in excess of three (3) months' duration to depart thirty-five (35) miles or more (radius) from the Premises' location; (iii) the Resident is discharged or released from active duty with the armed forces of the United States or the Coast Guard; or (iv) the Resident dies during active duty (in which case an adult member of his or her immediate family or personal representative of the estate may exercise this right).  In addition, a Resident that is a servicemember shall have the right to terminate this Lease as provided in the Servicemembers' Civil Relief Act, as shall Resident's dependents as provided in the Servicemembers Civil Relief Act.

B.    In order to terminate this Lease under Paragraph 29(A) above, Resident (or, in the case of death, an adult member of his or her immediate family or personal representative of the estate) shall provide Owner a written thirty (30) day notice of intent to vacate (accompanied by appropriate forms/documents evidencing the circumstances giving rise to such right).  The foregoing thirty (30) day period can be reduced or waived by Owner under special circumstances.  If (i) the Resident terminates this Lease early under Paragraph 29(A) above, or (ii) two Residents terminate this Lease under either Paragraph 29(C) or 29(D) below; then the terminating Resident(s) will not be assessed a penalty for early termination.  However, Resident is still responsible to turnover the Premises in accordance with the terms of this Lease.

C       If two Residents are military members and only one Resident terminates this Lease under Paragraph 29(A) above, the remaining Resident will not be required to terminate this Lease as to the remaining Resident, but has the option to do so by providing Owner a written thirty (30) day notice of intent to vacate.

In any case wherein the service member Resident elects to terminate this Lease early pursuant to the Service Member Civil Relief Act (SCRA) the termination shall be effective as against any non-service member Resident. Should the non-service member resident desire to continue to reside in the Premises, such lessee may request to sign a new lease with the Owner, and the Owner, in its discretion, may approve such lease. Absent such request and approval, the non-service member Resident's right to reside in the Premises shall terminate on the effective date of termination by the service member Resident.

In cases wherein the service member elects early termination authorized by Paragraph 29(A) above but not covered by the SCRA, the following procedures shall apply:

If only one Resident is a military member and if that Resident terminates under Paragraph 29(A) above in a non-SCRA termination, either the remaining Resident or the Owner may terminate this Lease by providing the other party with a written thirty (30) day notice of termination. In the event such non military Resident continues to occupy the Premises under this Lease, the monthly rental rate for the remainder of the then current term shall continue to be the monthly rent immediately prior to the effective date of termination by the military Resident. If the remaining Resident desires to terminate this Lease, a written thirty (30) day notice must be provided to the Owner.

D.      Change in Marital Status[1]:

i.      Right of Service Member to Terminate. If only one Resident is a military member and if there is a change in that Resident's marital status, that service member Resident shall have the option of terminating this Lease by providing thirty (30) day written notice to Owner. Such written notice shall be signed by the service member Resident and shall state the desire to terminate this Lease due to a change in marital circumstances. It shall identify one of the following as the change in circumstances: (1) A final decree of divorce, accompanied by a copy of such decree, (2) a written separation agreement, accompanied by a copy of such agreement, or (3) the spouses' desire to terminate the marriage and live separately despite the lack of a court order or written separation agreement and the maintenance of separate residences for at least thirty (30) days prior to the notice of termination. Such Lease termination shall be effective only as to the requesting service member Resident.

ii.     Right of Non Service Member Resident to Terminate: In the event that the service member Resident elects to terminate this Lease pursuant to Paragraph 29(D)(i) above, the remaining non service member Resident has the option to terminate by providing Owner with written (30) thirty day notice. In the event such non military Resident continues to occupy the Premises under this Lease, the monthly rental rate for the remainder of the then current term shall continue to be the monthly Rent immediately prior to termination by the military Resident.

E.      If Resident terminates this Lease early, because Resident is buying a house, Resident will not be assessed a penalty for early termination.  In such event, Resident will only be responsible for submitting to Owner a written thirty (30) day notice of intent to vacate and documentation of home purchase.

F.      If Resident intends to terminate this Lease prior to the expiration date of this Lease term (Box 3 on Page 1) for any other reason, Resident must submit a request in writing.  Resident will be subject to an Early Termination Fee equal to Two-Hundred and Fifty ($250.00) dollars.

---

[1]    Section still under review and subject to revision

30. **Termination by Owner Prior to Expiration of Term.** Owner shall be entitled to terminate this Lease if Resident is in default under any of the covenants, terms or conditions of this Lease. In addition, Owner may terminate this Lease for the following reasons:

    A.    Misuse or illegal use of the Premises, or conduct of residents, occupants and/or invitees which is detrimental to community safety and health;

    B.    Unacceptable care of or damage to the Premises;

    C.    The Resident, in the act of apparent abandonment and as a result of voluntary action, ceases to reside personally in the Premises;

    D    Use of the Premises for illegal activities or commercial transactions not permitted in writing by Owner.

    E.    Subject to the Residents' rights to terminate this Lease, and specifically excluding all periods of Temporary Duty (TDY), deployment, Temporary Assigned Duty TAD), leave, and vacation, a Resident shall be in default of this Lease if that Resident has vacated the property with no intention of returning to it.

    F.    In the event that the service member Resident elects to terminate pursuant to Paragraph 29(A) above, the Owner has the right to terminate this Lease with respect to the remaining non service member tenant, provided that Owner gives such Resident written thirty (30) day notice of such intent.

    In addition, the Owner may, with thirty (30) days written notice to the Resident, terminate this Lease upon learning of a change in marital status, regardless of whether the service member Resident elects to terminate this Lease. Change in marital status includes only the following: (1) A final decree of divorce from a court of competent jurisdiction, (2) Written separation agreement or (3) voluntary separation of the service member Resident and the non service member for at least sixty (60) continuous calendar days. The service member's absence from the residence due to deployment, military assignment, or military leave, shall not constitute separation for the purposes of this provision absent the consent of the service member. Notwithstanding any of the above provisions, the Owner shall not have the right to terminate under this section if the service member continues to reside in the Premises and one of the following conditions exist: (1) a court of competent jurisdiction identifies the service member-spouse as the primary custodial parent of a minor dependent, or (2) if there is no court order, the written separation agreement identifies the service member Resident as the primary custodial parent of a minor dependent, or (3) if there is neither a court order nor written separation agreement, one or more of the service member's minor dependents continue to maintain his/her principal place of residence in the Premises.

    G.    Construction or renovation relocations in accordance with the Construction and Relocation Rider.

31. **Damage to the Premises.** If, by no fault of Resident, the Premises is totally or partially damaged or destroyed by fire, earthquake, accident or other casualty that render the Premises totally or partially uninhabitable, either Owner or Resident may terminate this Lease by giving the other written notice. Rent shall be abated as of the date the Premises becomes totally or partially uninhabitable. The abated amount shall be the current monthly Rent prorated on a thirty (30) day period. If this Lease is not terminated, Owner shall promptly repair the damage, and Rent shall be reduced based on the extent to which the damage interferes with Resident's reasonable use of the Premises. If damage occurs as a result of an act of Resident or Resident's guests, only Owner shall have the right of termination, and no reduction in Rent shall be made.

32. **Insurance.** Resident's or guest's personal property and vehicles are not insured by Owner, against loss or damage, due to fire, theft, vandalism, rain, water, criminal or negligent acts of others, or any other cause. Resident is advised to carry Resident's own insurance (renter's insurance) to protect Resident from any such loss or damage.



33. **Attorneys' Fees and Costs.** If any legal action or proceeding is brought by either party to enforce any part of this Lease, the prevailing party will recover, in addition to all other relief, reasonable attorneys' fees and court costs.

34. **Informal Dispute Resolution.** If you have a request or concern:

    A.    Please bring request or concern to the attention of the onsite management office.

    B.    If you are not satisfied with the response from the onsite management office, please bring the request or concern to the attention of the Regional Property Manager at the General Management Office.



35. **Mediation.** Owner and Resident agree to mediate any dispute or claim arising between them out of this Lease, or any resulting transaction, before resorting to court action. Mediation fees, if any, shall be divided equally among the parties

involved.  The parties agree to use a mediator selected from the mediation list incorporated in the Community Guidelines & Policies. If, for any dispute or claim to which this paragraph applies, any party commences an action without first attempting to make reasonable efforts to resolve the matter through mediation, or refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees even if that party eventually prevails in the court proceeding.  The following matters are excluded from this paragraph: (i) an unlawful detainer action; (ii) the filing or enforcement of a mechanic's lien; (iii) any claim in an amount less than or equal to two (2) month's rent; and (iv) any matter within the jurisdiction of a probate, or bankruptcy court.  The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver of the mediation provision.

36.     **Choice of Law:**  Owner and Resident agree that this Lease and the contractual relationship between the parties shall be construed exclusively in accordance with, and shall be exclusively governed by, federal substantive law, except that the following state law shall apply: California Civil Code, Sections 1940 – 1954.1 (Leasing Land and Dwellings), California Code of Civil Procedure Sections 1159 – 1179a (Summary Proceedings for Obtaining Possession of Real Property in Certain Cases), Sections 1980 – 1991 (Disposition of Personal Property Remaining on Premises at Termination of Tenancy) and California state common law interpreting these sections.

37.     **Time of Essence; Entire Contract; Changes.**  Time is of the essence.  All understandings between the parties are incorporated in this Lease.  Its terms are intended by the parties as a final, complete and exclusive expression of their agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement.  If any provision of this Lease is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect.  Neither this Lease nor any provision in it may be extended, amended, modified, altered or changed except in writing.  This Lease and any supplement, addendum or modification, including any copy, may be signed in two or more counterparts, all of which shall constitute one and the same writing.

38.     **Keys and Remotes.**  Resident acknowledges receipt of:

☐  _____ key(s) to the Premises,            ☐ _____ remote control device(s) for garage door/gate opener(s),
☐  _____ key(s) to mailbox,                  ☐ _____

If Resident re-keys existing locks or opening devices, Resident shall immediately deliver copies of all keys to Owner. Resident shall pay all costs and charges related to loss of any keys or opening devices.  Resident may not remove locks, even if installed by Resident.

39.     **Notifications.**

        a) To Resident:  Unless otherwise required in this Lease, any notice from Owner to Resident will be valid only if: (i) it is in writing, (ii) it is addressed to Resident at the Premises and (iii) it is personally delivered to the Premises or sent by mail.  The effective date of a notice will be the day it is personally delivered to the Premises or, if it is mailed, two days after the date it is postmarked.

        (b) To Owner:  Unless otherwise required in this Lease or by law, Resident will give all required notices to Owner in writing, delivered personally or sent by mail.  All such notices will be addressed to Owner at the address set forth in Box 10 on the first page of this Lease.  The effective date of such notice will be the day it is personally delivered or, if it is mailed, two days after the date it is postmarked.

40.     **Addenda.**  Resident acknowledges receipt of the following Addenda, copies of which are attached hereto and are incorporated as part of this Lease.

        ☐     Community Guidelines & Policies
        ☐     Pet Agreement
        ☐     Satellite Dish & Antenna Agreement
        ☐     Construction and Relocation Rider
        ☐     Equipment and Furniture Addendum (GOQ only)
        ☐     Mold and Mildew Disclosure
        ☐     Lead Based Paint Disclosure
        ☐     Surrounding Land Uses Disclosure
        ☐     Ordnance Disclosure
        ☐     Proposition 65 Disclosure
        ☐     Radon Disclosure.

41.     **Resident Representations.**  This Lease was entered into based upon the representations, information, and statements of the Resident(s) contained in the Rental Application.  Resident(s) acknowledge that if any of those representations, information, and statements are found to be misleading, incorrect or untrue, it is a material breach of this Lease and

INITIAL

Owner may immediately terminate this Lease and hold Resident(s) responsible for any damages or costs incurred in accordance with the law.

42.  **Mutual Termination by Resident(s) and Owner Prior to Expiration of Term.**  Debarment to the installation of any Occupant identified in Box 11 of Page 1 of this Lease shall give the Resident(s) the right to terminate this Lease, without penalty, upon thirty (30) days advance written notice to the Owner.  Debarment to the installation of any Resident of this Lease shall give any remaining Resident(s) to this Lease the right to terminate this Lease, without penalty, upon thirty (30) days advance written notice to the Owner.  Debarment to the installation of the sole Resident of this Lease shall give the Owner the right to terminate this Lease, without penalty, upon thirty (30) days advance written notice to the Resident.

[Remainder of Page Intentionally Left Blank]

INITIAL

Resident has read and understands this Lease and agree to be bound by all of its covenants, terms and conditions. Resident acknowledges that Resident has received a duplicate original of this Lease.

X _____
RESIDENT

X _____
RESIDENT

OWNER.

CAMP PENDLETON & QUANTICO HOUSING, LLC
By: LPC Pendleton Quantico PM, Inc.
    Authorized Agent

By: _____
Name: _____
Title: _____

X 05-27-2008
DATE

X 5-27-08
DATE

5/27/08

X _____
DATE

PPV Pendleton Lease Agreement